Ed Peter MACK, et al., Plaintiffs,

v.

RUSSELL COUNTY COMMISSION,
et al., Defendants.

Civ. A. No. 89–T–459–E.

United States District Court,
M.D. Alabama, E.D.

Dec. 21, 1993.

James U. Blacksher, John C. Falkenberry, Leslie Proll, Edward Still, Birmingham, AL, Julius L. Chambers, Dana Cunningham, New York City, Lani Guinier, Law School of University of Pennsylvania, Philadelphia, PA, Pamela Karlan, University of Virginia School of Law, Charlottesville, VA, for Ed Mack, Nathaniel Gosha, III, Lawrence C. Presley, Floyd Donald, Walt Higgins, Daniel Littlefield, Alice B. Presley, Joyce C. Riggins, David L. Williams, Gladys A. Barnes.

James U. Blacksher, John C. Falkenberry, Edward Still, Birmingham, AL, for William America.

Bart Gregory Harmon, James W. Webb, Kendrick E. Webb, Webb & Eley, P.C., Montgomery, AL, for Russell County Com'n.

Jack Floyd, Mary Ann Stackhouse, Floyd, Keener, Cusimano & Roberts, Gadsden, AL, for Etowah County Com'n.

James W. Webb, Webb & Eley, P.C., Montgomery, AL, for Escambia County Com'n.

James Eldon Wilson, U.S. Atty's Office, Montgomery, AL, James P. Turner, Gerald W. Jones, J. Gerald Hebert, Jennifer C. Cass, Poli A. Marmolejos, Barry H. Weinberg, U.S. Dept. of Justice Civil Rights Div., Voting Section, Washington, DC, for amicus curiae U.S.

## ORDER

Before JOHNSON, Senior Circuit Judge, THOMPSON, Chief District Judge, and HOBBS, Senior District Judge.

PER CURIAM:

This three-judge district court was convened pursuant to 28 U.S.C.A. § 2284 (West 1978 & Supp.1993) to hear plaintiffs' claims under § 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c (West 1981). Plaintiffs argued that three resolutions, one passed by defendant Russell County Commission and two passed by defendant Etowah County Commission, constituted changes in a "standard, practice, or procedure with respect to voting," 42 U.S.C.A. § 1973c, subject to judicial or administrative preclearance under § 5. By order of August 1, 1990, we held that one of the three resolutions—the Etowah County Commission's 1987 road supervision resolution—required preclearance, and we enjoined the Commission from enforcing that resolution without first obtaining preclearance. We also held that the other two resolutions—the Russell County Commission's unit system resolution and the Etowah County Commission's common fund resolution—did not require § 5 preclearance. Plaintiffs appealed, and the Supreme Court subsequently affirmed, our finding that these two resolutions did not require preclearance. *Presley v. Etowah County Commission,* —— U.S. ——, 112 S.Ct. 820, 117 L.Ed.2d 51

(1992). No appeal was taken from our injunction against enforcement of the Etowah County Commission's 1987 road supervision resolution.

This case is now before the court on plaintiffs' motion, as amended, for additional relief seeking enforcement of the injunction against implementation of the 1987 road supervision resolution, and on plaintiffs' motion for a temporary restraining order and preliminary injunction pending disposition of their motion for additional relief. For the reasons set forth below, we deny plaintiffs' motion for additional relief and, therefore, further deny as moot their motion for a temporary restraining order and preliminary injunction.[1]

## I. BACKGROUND

The underlying facts in this case are adequately set forth in our order of August 1, 1990. Prior to 1987, the Etowah County Commission was composed of five members, four elected at large from four residency districts and a chairman elected at large with no residency requirement. Each of the four residency districts constituted a road district, and the commissioner from each residency district exercised complete supervision and control over the road shop, equipment, and road crew of that district. Pursuant to a 1986 consent decree, the Commission switched to a structure of six members elected from single-member districts, rather than at large. As a result of this switch, the first black commissioner, Lawrence C. Presley, was elected.

The 1986 consent decree provided that the two new commissioners elected in 1986 "shall have all the rights, privileges, duties and immunities of the other commissioners, who have heretofore been elected at large." However, on August 25, 1987, over the "no" votes of the two newly elected commissioners, the Commission passed the road supervision resolution, which provided that each of the four "holdover" commissioners would continue to "oversee and supervise the road workers and the road operations assigned to the road shop" in their respective districts. The resolution further provided that the four holdovers "shall jointly oversee, with input and advice of the County Engineer, the repair, maintenance and improvement of the streets, roads and public ways of all of Etowah County."

In the order of August 1, 1990, we found the Etowah County Commission's 1987 road supervision resolution to "effect a significant relative change in the powers exercised by governmental officials elected by, or responsible to, substantially different constituencies of voters." Order of August 1, 1990, at 19. In so doing, we concluded: "Whereas before 1987 all the voters of Etowah County participated in choosing the commissioners responsible for road management, the 1987 resolution stripped the voters in districts 5 and 6 of any electoral influence over such commissioners." Id. at 28. Accordingly, we found the resolution to be covered by § 5 and enjoined the Etowah County Commission from enforcing the 1987 road supervision resolution without first obtaining preclearance. Although the Etowah County Commission passed a second resolution addressing road work in 1990, we did not consider whether it required preclearance because no party challenged the 1990 resolution under § 5.[2]

---

1. Nothing in our decision today precludes plaintiffs from maintaining their claims under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973 (West Supp.1993), and related claims under other constitutional and statutory provisions against the Etowah County Commission. We in no way prejudge or suggest any view as to the merits of those claims.

2. The Etowah County Commission passed this resolution on January 23, 1990. The 1990 resolution provided, in relevant part:

"4. Minor road repair, such as repair of potholes, and general road maintenance, such as grass cutting, shall not be subject to a vote of the Commission, but shall be determined by the Commissioner responsible for the district where such general maintenance and minor repair must be done.

5. With respect to the supervision of major and minor road repair and construction, each Commissioner shall supervise the work performed in his district.

6. With respect to the daily routine operation of each road shop, each Commissioner assigned to each road shop shall continue to supervise said operations."

We found that this 1990 resolution did not moot the preclearance issue because it would not entirely undo the changes wrought by the 1987 resolution. It is now a disputed issue whether the 1990 resolution ever went into effect.

We found that the two other resolutions at issue—the Russell County Commission's unit system resolution and the Etowah County Commission's common fund resolution—were not "changes in voting" requiring preclearance under § 5. The unit system resolution, passed in 1979, delegated control over road construction, maintenance, personnel, and inventory to the county engineer, an official appointed by the entire Commission and responsible to it. Prior to 1979, each Russell County Commissioner, like those in Etowah County, exercised control over a district road shop. The common fund resolution, passed in 1987, provided that all funds for the repair and maintenance of roads would be allocated on a county-wide basis, in accordance with need, instead of budgeted on a district-by-district basis. We found that neither of these resolutions effected a shift in authority between officials with different constituencies—distinguishing them from the road supervision resolution—and concluded that preclearance was not required.

## II. DISCUSSION

Plaintiffs' original motion for additional relief asserted that the 1990 resolution was as much a change in voting as the 1987 road supervision resolution and, therefore, should also be subject to preclearance. They sought, by their motion, to extend the court's injunction to the 1990 resolution. In a later amendment to their motion, however, plaintiffs argued that the Etowah County Commission never ceased implementing the 1987 road supervision resolution and never sought preclearance, in direct violation of the August 1, 1990, injunction. They further asserted that neither the 1990 resolution nor the common fund resolution had been implemented by the Commission. In considering plaintiffs' motions, we will accept these factual assertions as true.

In accordance with these assertions, plaintiffs request, among other relief, that we enforce our injunction against implementation of the 1987 road supervision resolution and impose sanctions on the Commission. They contend that the injunction against enforcement must remain in effect because it was never challenged and, alternatively, because implementation of the road supervision resolution is subject to preclearance even under the *Presley* standard. The Etowah County Commission argues that its conduct in implementing either the 1987 road supervision resolution or the 1990 resolution—or indeed any system of road supervision—is permissible under the Supreme Court's *Presley* decision.

Although the Supreme Court affirmed our finding that the unit system resolution and common fund resolution did not require preclearance, the Court rejected our interpretation of § 5. Specifically, the Court rejected our assumption that "transfers of power among governmental officials could be changes with respect to voting" under § 5. *Presley,* —— U.S. at ——, 112 S.Ct. at 831. The Court held that "[c]hanges which affect only the distribution of power among officials are not subject to § 5 because such changes have no direct relation to, or impact on, voting." *Id.* at ——, 112 S.Ct. at 830. Because the Supreme Court rejected our interpretation of § 5—an interpretation we applied to all three resolutions—we must revisit our injunction against enforcement of the road supervision resolution in considering plaintiffs' motions. It is now our task to apply the Supreme Court's different interpretation of § 5 to the resolution at issue in this case.

■ Section 5 requires political subdivisions such as the Etowah County Commission to obtain either judicial or administrative preclearance before implementing any new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting." 42 U.S.C.A. § 1973c. In *Presley,* the Supreme Court held that the two resolutions in question "affected only the allocation of power among governmental officials" and, as such, did not involve changes in voting covered by § 5. —— U.S. at ——, 112 S.Ct. at 832. Construing its prior cases, the Court set forth four "typologies" of changes covered by § 5, specifically those involving: (1) the manner of voting; (2) candidacy requirements and qualifications; (3) the composition of the electorate eligible to vote for candidates for a given office; and (4) the creation or abolition

of an elective office. *Id.* at ——, 112 S.Ct. at 828 (exemplary cases cited in opinion). In so doing, the Court cabined the reach of § 5 to changes directly affecting voting and refused to extend it to "changes in the routine organization and functioning of government." *Id.* at ——, 112 S.Ct. at 829. The Court found the unit system and common fund resolutions to fall within the latter characterization.

We find that the Supreme Court's interpretation of § 5 in *Presley* requires us to lift the injunction against the enforcement of the 1987 road supervision resolution because that resolution, like the two resolutions before the Supreme Court, cannot be said to involve a change in voting under the *Presley* standard. The August 1, 1990, injunction was issued on the assumption that reallocations of authority within government can constitute voting changes. We relied on this same assumption in denying relief as to the two resolutions raised on appeal. In considering our assumption, the Supreme Court wrote:

> "Even upon the assumption (the assumption we reject in this case) that some transfers of power among government officials could be changes with respect to voting as that term is used in the [Voting Rights Act], we disagree with the District Court's test. The question whether power is shifted among officials answerable to the same or different constituencies is quite distinct from the question whether the power voters exercise over elected officials is affected."

—— U.S. at ——, 112 S.Ct. at 831. While the road supervision resolution gives the four holdover commissioners control over road service to the exclusion of the other two commissioners, it does not in any way affect "the power voters exercise over elected officials." That is, as the Supreme Court concluded with respect to the Russell County Commission's unit system resolution, "[b]oth before and after the change the citizens of [the] County were able to vote for members of [the] County Commission.... [T]he fact that an enactment alters an elected official's powers does not in itself render the enactment a rule governing voting." *Id.* at ——, 112 S.Ct. at 830.

We reject plaintiffs' contention that the 1987 road supervision resolution fits within the non-exhaustive § 5 violation typologies described in *Presley.* First, plaintiffs argue that the resolution fits within the third factual context, namely, "changes in the composition of the electorate that may vote for candidates for a given office." The Supreme Court's examples of this factual context include a change from ward to at-large elections, *Perkins v. Matthews,* 400 U.S. 379, 394, 91 S.Ct. 431, 439, 27 L.Ed.2d 476 (1971), and changes to boundary lines of voting districts. *Id.* at 388, 91 S.Ct. at 437; *City of Richmond v. United States,* 422 U.S. 358, 367, 95 S.Ct. 2296, 2302, 45 L.Ed.2d 245 (1975).

Plaintiffs argue that a different electorate in Etowah County votes for the office of "road commissioner" after passage of the resolution than before. The essential flaw in this argument, however, is that voters in Etowah County elect a county commissioner, not a road commissioner as plaintiffs allege. Although road supervision is a substantial part of the work of the Etowah County Commission, the Commission has other responsibilities. Under *Presley,* therefore, the Commission may vote to apportion those duties among the commissioners as it sees fit, insofar as § 5 is concerned. The "composition of the electorate" for each commissioner remains unchanged by the road supervision resolution, and it is therefore not a change in voting under the third typology.

Second, plaintiffs argue that the road supervision resolution would be a § 5 violation under the fourth *Presley* typology, namely, a change "affecting the creation or abolition of an elective office." This typology includes "substantive changes as to which offices are elective," *Presley,* —— U.S. at ——, 112 S.Ct. at 828, and is typified by the case of *Bunton v. Patterson,* one of the four § 5 cases addressed by the Supreme Court in *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). In *Bunton,* the Mississippi Code was amended to provide that, in certain counties, the superintendent of education could no longer be elected and must be appointed by the board of education. *Allen,* 393 U.S. at 550–51, 89 S.Ct. at 824.

Here again, however, there is no "elective office" of road commissioner in Etowah County, and therefore no elective office could have been abolished by the resolution. There was a shift in responsibility on the Commission as to road supervision, but the elective office of commissioner was not being replaced by an appointed official. When considering the applicability of the fourth typology to the Russell County unit system resolution, one which transferred road operations to an appointed county engineer, the Supreme Court held:

"As to the fourth category, it might be argued that the delegation of authority to an appointed official is similar to the replacement of an elected official with an appointed one, the change we held subject to § 5 in *Bunton v. Patterson.* This approach, however, would ignore the rationale for our holding: 'after the change, [the citizen] is prohibited from electing an officer formerly subject to the approval of the voters.' In short, the change in *Bunton v. Patterson* involved a rule governing voting not because it affected a change in the relative authority of various governmental officials, but because it changed an elective office to an appointive one."

*Presley,* —— U.S. at ——, 112 S.Ct. at 830 (citation omitted). In the instant case, as in the Supreme Court's consideration of the Russell County unit system resolution, the voters of all districts in Etowah County retain the right to elect a county commissioner. Moreover, authority was delegated in this case among commissioners, all of whom are elected, and not to an appointed official. Applying the Supreme Court's interpretation as we must, we find that this ends the § 5 inquiry.[3]

In attempting to fit the 1987 road supervision resolution into one of the four *Presley* typologies, plaintiffs are essentially resting upon the same assumption we did when issuing the injunction: a shift in authority among elected officials is a change in voting that requires preclearance under § 5. This, however, is precisely the rationale rejected by the Supreme Court. The road supervision resolution did not affect who may vote for county commissioner, nor did it replace the office of commissioner with an appointed official. As the Court concluded with respect to the unit system and common fund resolutions, the road supervision resolution "affected only the allocation of power among government officials," and "had no impact on the substantive question of whether a particular office would be elective or the procedural question how an election would be conducted." *Id.* at ——, 112 S.Ct. at 832. Having applied the *Presley* interpretation of § 5 to the 1987 road supervision resolution, we conclude that the injunction against enforcement of that resolution was erroneous and must not be given effect.

Because we hold that this injunction is not valid, plaintiffs' motion for additional relief must be denied since no relief is available to them under § 5. Furthermore, the denial of the motion for additional relief moots plaintiffs' motion for a temporary restraining order and preliminary injunction.

We now briefly address plaintiffs' argument that the injunction remains valid— even if implementation of the road supervision resolution is permissible under *Presley*—simply because the injunction was not challenged by the defendants on appeal or by motion for relief with this court. Plaintiffs further suggest that contempt sanctions are

---

**3.** The *Presley* Court wrote regarding the unit system resolution that it "need not consider here whether an otherwise uncovered enactment of a jurisdiction subject to the Voting Rights Act might under some circumstances rise to the level of a *de facto* replacement of an elective office with an appointive one, within the rule of *Bunton v. Patterson.*" —— U.S. at ——, 112 S.Ct. at 831. The Court relied on the fact that the Russell County Commission retained "substantial authority" over the county engineer. *Id.* Although plaintiffs appear to refer to this *de facto* replacement exception, we find that the exception does not apply. Again, there has been no replacement, *de facto* or otherwise, of the office of county commissioner with an appointive official. All authority over road work remains within the elected Commission. Thus, if the *de facto* exception did not apply where a commission retained substantial authority over an appointed county engineer, it clearly would not apply where, as here, a commission retains plenary authority over road work and has only chosen to transfer this authority among certain of its elected members.

appropriate in this case. Assuming that the Etowah County Commission has been in violation of the injunction, plaintiffs' argument would have been persuasive *prior* to the *Presley* decision. Generally, a court's order remains binding until a motion for relief is filed and granted pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, or vacated or reversed by a reviewing court; the Etowah County Commission never filed for relief under Rule 60(b) or by any other means, and did not appeal the injunction to the Supreme Court.

The circumstances of this case, however, are atypical. Because, as we now hold, the 1987 road supervision resolution is not covered by § 5, our injunction issued on August 1, 1990, requires an illogical act: the preclearance, either judicially or administratively, of an uncovered change. Additionally, although the sanction of contempt may have been appropriate prior to the *Presley* decision, upon necessary proof of noncompliance with the court's order, *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir.1991), we now decline to hold the defendant in contempt in light of our decision to lift the injunction.

Accordingly, for the foregoing reasons, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The injunction against enforcement of defendant Etowah County Commission's 1987 road supervision resolution without preclearance, issued by order of this three-judge court on August 1, 1990, is lifted;

(2) Plaintiffs' motion for additional relief, filed on December 4, 1992, and amended on April 15, 1993, is denied; and

(3) Plaintiffs' motion for a temporary restraining order and preliminary injunction, filed on December 1, 1993, is denied as moot.